UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CRYSTAL ANN
McCLARRIE JOYA,

      Plaintiff,

v.                                   CASE No. 8:19-cv-1378-T-TGW

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the Commissioner of Social Security fails to explain his decision to omit from the plaintiff's residual functional capacity a limitation on interaction with supervisors, the decision will be reversed and the matter remanded for further consideration.

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was twenty-three years old at the time of the most recent administrative hearing and who has a special education diploma, has no past relevant work (Tr. 22, 25). She filed a claim for supplemental security income payments, alleging that she became disabled due to "speech problems, can't read, learning problems" (Tr. 80). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, received a hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of mild intellectual disability, adjustment disorder and major depressive disorder (Tr. 19). He concluded further that the plaintiff (Tr. 21-22)

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant is restricted to work that is limited to simple one, two, or three step job tasks or instructions; that does not require more than casual contact or interaction with coworkers or the general public (casual contact is defined as brief, superficial contact); that does not demand close attention to detail; and that is low stress, and not production paced.

2

The law judge determined that the plaintiff has no past relevant work (Tr. 25). However, based on the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as counter supply worker, night cleaner and cleaner II (Tr. 26). Accordingly, the law judge decided that the plaintiff was not disabled (id.).

The Appeals Council denied the plaintiff's request for review so that the law judge's decision became the final decision of the Commissioner of Social Security. The plaintiff, represented by counsel, timely filed this lawsuit challenging the administrative decision.

II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

3

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

4

by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 416.922(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

When an impairment is severe, the next inquiry is whether the impairment meets, or equals, a listing in Appendix 1 (step three), which sets out criteria for the most serious impairments. 20 C.F.R. 416.920(d). If it does, the claimant will be found disabled, without regard to the claimant's age, education and work experience. Id. If it does not, the claimant's residual functional capacity is assessed. 20 C.F.R. 416.920(e). Based upon that assessment, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 416.920(g).

### III.

The plaintiff asserts two challenges to the law judge's evaluation of her mental impairments (Doc. 17). She argues that the law judge erred in finding that her impairments did not "meet[] the criteria of Listing 12.05B" and, alternatively, that the law judge "failed to account for all of Plaintiff's demonstrated limitations in his RFC finding" (id., pp. 4, 20). The latter contention has merit and warrants reversal.

A. The plaintiff's primary challenge is to the law judge's conclusion that her intellectual disorder did not meet the criteria of listing 12.05(B) (id., pp. 4–19). A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. 20 C.F.R. Part 404, Subpart P, Appendix 1; Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir.1987).

The plaintiff bears the burden of showing that she meets a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation 4[16].[9]20(d), [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); Wilkinson o/b/o Wilkinson v. Bowen, supra, 847 F.2d at 662.

The plaintiff contends that she meets listing 12.05(B) of Appendix 1, which concerns disabilities based on intellectual disorders. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 at §12.00(A)(1). To meet the criteria for

7

intellectual disorder under Listing 12.05(B), the plaintiff must show that she has

> [s]ignificantly subaverage general intellectual functioning" evidenced by qualifying IQ scores, and "[s]ignificant deficits in adaptive functioning." To show that she has significant deficits in adaptive functioning, a claimant must show that she has "extreme limitation of one, or marked limitation of two" out of the following four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

Tisdale v. Social Security Administration, Commissioner, 806 Fed. Appx. 704, 707 (11th Cir. 2020) (citations omitted).

The law judge listed in the decision the requirements to meet listing 12.05 (Tr. 20–21). He acknowledged the plaintiff's full-scale IQ score of 68, and found that she had severe mental impairments, including mild intellectual disability (Tr. 19, 23). However, the law judge found that the plaintiff did not meet, or equal, an Appendix 1 listing and he particularly evaluated the plaintiff's contention that she met listing 12.05(B) (Tr. 20–21). He explained (Tr. 21):

> While the claimant's representative argued that the claimant satisfies this listing, in this case, these

requirements are not met because the claimant's deficits in adaptive functioning as suggested by her daily activities, which include fully independent activities of daily living (ADLs) such as caring for her one-year old daughter, performing household chores, and exercising by swimming every other day are inconsistent with the type of deficits required. And, more importantly, because her functional limitations are not of the severity required (two marked or one extreme limitation)[2] as shown on examinations (Exs. 1F; 5F) and in treatment records (Ex. 6F), which show her mental health issues have not required any medication and that her cognitive issues, while severe, are not precluding all function in these areas.

The law judge's finding that the plaintiff does not meet listing 12.05(B) is supported by substantial evidence. There is no doctor or psychologist who has opined that the plaintiff meets listing 12.05. Furthermore, the Psychiatric Review Technique form called for the two reviewing psychologists to indicate if any of the criteria of listing 12.05 were met, and both psychologists concluded that the paragraph B criteria of the

---

[2]Specifically, the law judge found (Tr. 20):

In understanding, remembering, or applying information, the claimant has a mild limitation. In interacting with others, the claimant has a moderate limitation. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a mild limitation.

9

listings were not satisfied (see Tr. 85, 99). Moreover, the law judge found that the plaintiff's activities of daily living did not support the presence of the requisite deficits in adaptive functioning necessary to meet a listing, explaining that the plaintiff is a married woman who cares for herself and her one-year old daughter, performs household chores, does laundry, shops with assistance, and can prepare meals (see Tr. 21, 22). Tisdale v. Social Security Administration, Commissioner, supra, 806 Fed. Appx. at 710 ("Adaptive functioning" is a "measure of the claimant's typical functioning at home and in the community, alone or among others.").

The plaintiff quibbles with the law judge's finding that she does not satisfy the paragraph B criteria of listing 12.05 (Doc. 17, pp. 5–18). She emphasizes her low percentile ranks on standardized test scores and poor school performance (see, e.g., id., pp. 6, 8, 10). However, those circumstances do not establish that she has listing-level deficits in adaptive functioning as an adult. See Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986); see, e.g., Tisdale v. Social Security Administration Commissioner, supra, 806 Fed. Appx. 704 (despite a full-scale IQ of 53 and cognition that appeared to be in the "extremely low" range, she did not have requisite deficits in adaptive functioning to satisfy listing 12.05).

The plaintiff also notes Dr. Nicholas Gehle's opinion that the plaintiff's mental health symptoms appear to be severely impacting her mental functioning (see Tr. 333). As the law judge stated, this opinion is "nebulous" (Tr. 25). Further, it is not an opinion that the plaintiff's impairments meet a listing, nor is such a conclusion compelled based on Dr. Gehle's general observations and mental status examination findings (see Tr. 331, 333).

The plaintiff also emphasizes the opinion of reviewing non-examining psychologist Adrine McKenzie that the plaintiff had marked limitations in concentration, persistence and/or pace (Doc. 17, pp. 15, 17; see Tr. 99-102). However, closer examination shows that the marked limitation pertained only to the plaintiff's ability to understand, remember and carry out detailed instructions (Tr. 101). Notably, Dr. McKenzie expressly opined that the plaintiff was capable of performing simple routine tasks (Tr. 102). See 20 C.F.R. 416.925(a) (listing-level impairments must be "severe enough to prevent an individual from doing any gainful activity"). Therefore, Dr. McKenzie's opinion does not support the plaintiff's position.

Finally, the plaintiff points out that she cannot drive or count change, and that she has impairments in expressive language and math

11

computation (Doc. 17, pp. 8, 10). The law judge considered these deficits, and concluded that, "[d]espite her limited IQ with limitations performing activities that re[quire] certain abilities, such as mathematics, it is apparent that activities that do not require various skills are still possible" (Tr. 24). See 20 C.F.R. 416.925(a).

In sum, the plaintiff's contention that she meets listing 12.05B fails because she is essentially asking the court to reweigh the evidence and substitute its judgment for that of the law judge, which it may not do. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (even if evidence preponderates against the law judge's finding the court must affirm when substantial evidence supports the finding).

B. The plaintiff contends, alternatively, that remand is warranted because the law judge's determination of her residual functional capacity was deficient (Doc. 17, pp. 20–25). She argues (id., p. 21):

> This RFC fails to fully account for the significant deficits in working and verbal comprehension ... which preclude Plaintiff from independently and on a sustained basis understanding and remembering even simple instructions. Moreover, the ALJ included no limitations to account for Plaintiff's difficulty responding appropriately to supervision and criticism.

12

The plaintiff persuasively argues that the law judge's failure to address her ability to interact with supervisors is reversible error. In this respect, the plaintiff contends (id., pp. 23–24):

> To be clear, [the law judge] acknowledged in his discussion [the plaintiff's] testimony that she is easily agitated by people yelling and will curse out people who criticize her, as well as the records that show she sought treatment for anger and frustration. Tr. 23-24. He stated that "[i]t is also apparent from her records that she has an adjustment disorder and major depressive disorder, with symptoms of anger, frustration, and sadness linked heavily to her cognitive issues." Tr. 24. Under these circumstances, there is no possible explanation for the ALJ having addressed several areas of social functioning ... and not address the obvious fact that Plaintiff will have significantly difficulty accepting instruction, etc.

The law judge's decision does not mention, one way or the other, the plaintiff's ability to interact and respond appropriately to supervisors. However, the law judge told the vocational expert during the administrative hearing that his "intent was not [to limit the plaintiff's interaction with] supervisors" (Tr. 74). The reasoning for this determination is not apparent from the decision.

The law judge found that the plaintiff had a moderate limitation in interacting with others (Tr. 20). He recounted the plaintiff's hearing

13

testimony that "she is easily agitated by people yelling and she will curse out people who criticize her," and the plaintiff's reports during therapy sessions that she gets angry when people disrespect her (Tr. 22, 24; see Tr. 53–54; see also Tr. 211, 217 (the plaintiff stated in a Functional Report that she is quick to anger)). The law judge also iterated the plaintiff's report of "frustration and anger when told what to do," and Dr. Gehle's opinion that "most [of the plaintiff's] mood symptoms appeared related to frustration about her cognitive deficits" (Tr. 24). Dr. Gehle clarified that his comment about "cognitive deficits" referred to the plaintiff "get[ting] angry when she has to be told how to do something" (Tr. 332). The law judge concluded (Tr. 24):

> It is ... apparent from her records that she has an adjustment disorder and major depressive disorder, with symptoms of anger, frustration, and sadness heavily linked to her cognitive issues. Accordingly, the undersigned has imposed significant mental health limitations to account for these issues.

The law judge accommodated the plaintiff's moderate limitation in social interaction by limiting her to jobs that "[do] not require more than casual contact or interaction with coworkers or the general public (casual contact is defined as brief, superficial contact)" (Tr. 21-22). Thus,

the residual functional capacity does not address supervisors. As pertinent here, the law judge stated, "[f]urther limitation than found [in the RFC] is not merited" (Tr. 24) because "while [the plaintiff] displays some anger and frustration issues and thus there are obviously some social concerns, she has managed to maintain personal relationships consistently over time" (Tr. 25). This explanation does not shed light on the law judge's reasoning for not limiting the plaintiff's interaction with supervisors. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (law judge must state explicit and adequate reasons for discounting subjective symptoms).

The Commissioner does not specifically address this issue (see Doc. 18, pp. 9–12). He argues, generally, that substantial evidence supports the law judge's decision and that the law judge was not required to include limitations based on subjective complaints that the law judge did not find fully credible (Doc. 18, p. 10). The defendant's arguments are unpersuasive because the law judge accepted the plaintiff's subjective complaints about problems with anger and frustration (see Tr. 24). He consequently placed limitations on the plaintiff's interactions with the people that she may encounter at work, except for supervisors. The law judge did not explain why he did not limit supervisor interaction, and an explanation is necessary

15

considering the evidence that the plaintiff's anger is precipitated by criticism and being told what to do, which is what supervisors do. See Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (the law judge is required to state specifically the weight accorded each item of impairment evidence and the reasons for his decision on such evidence). In the absence of such an explanation, meaningful judicial review is not possible. See Ryan v. Heckler, 762 F.2d 739, 941–42 (11th Cir. 1985); Gibson v. Heckler, supra, 779 F.2d at 623.

Therefore, in order for the residual functional capacity to be supported by substantial evidence, the law judge must adequately explain his reasoning for omitting a limitation on the plaintiff's interaction with supervisors. See id.; Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1178 (11th Cir. 2011) ("Substantial evidence is ... relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is hereby **REVERSED** and the matter remanded for further proceedings.

The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 22nd day of July, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE